UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 5:14-cr-00107 |
| | : | |
| KYLE COSTELLO | : | |

**O P I N I O N**
**Motion for Compassionate Release, ECF Nos. 236, 253 – Denied**

**Joseph F. Leeson, Jr.** **August 26, 2026**
**United States District Judge**

## I. INTRODUCTION

Following a jury trial, Defendant Kyle Costello was convicted of armed bank robbery, conspiracy to commit armed bank robbery, and using or carrying a firearm during and in relation to a crime of violence, for which he was cumulatively sentenced to 204 months of imprisonment. This Court has since denied Costello's petition under 28 U.S.C. § 2255 to vacate his sentence, and dismissed Costello's Motion for Rule 60(b) Relief. Now before the Court is Costello's Motion for Compassionate Release. For the reasons below, the motion will be denied.

## II. Background[1]

On November 7, 2013, two men robbed a National Penn Bank branch near Shillington, Pennsylvania. *See United States v. Costello*, 720 F. App'x 120, 121 (3d Cir. 2018). Costello's parole agent saw an image from the bank's surveillance video on a local news website, and the agent recognized Costello as one of the robbers in the video. *See id.* Costello was arrested in Texas on December 20, 2013, and later extradited back to Pennsylvania pursuant to a parole

[1] A more detailed factual background of this case can be found in the Court's prior Opinion denying Costello's § 2255 petition. *See* Op. 12/18/20, ECF No. 208.

violation warrant. *See id.* On March 6, 2014, a federal grand jury indicted Costello for the robbery, charging him with conspiracy to commit bank robbery, 18 U.S.C. § 371, armed bank robbery and aiding and abetting, 18 U.S.C. §§ 2, 2113(d), and carrying or using a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii). *See id.* at 122.

Costello went to trial, where he was convicted by a jury on all three counts. *See id.* Following a multi-day sentencing hearing, Costello was sentenced to a total term of 204 months' imprisonment. *See* Judgment as to Kyle Costello 2, ECF No. 145. Costello appealed his conviction to the Third Circuit, asserting (1) a violation of his right to a speedy trial, and (2) an improper inclusion of a previous aggravated assault conviction as a prior "crime of violence" for purposes of Career Offender status under USSG § 4B1.2(a). *See Costello*, 720 F. App'x at 122. The Third Circuit affirmed his conviction, finding neither a violation of Costello's speedy trial rights nor an improper inclusion of the aggravated assault conviction. *See id.* at 124. Following his direct appeal, Costello filed a motion under 28 U.S.C. § 2255. *See* Mot. § 2255, ECF No. 177. On December 18, 2020, this Court dismissed and denied Costello's § 2255 motion and declined to issue a certificate of appealability. *See* Op. 12/18/20, ECF No. 208; Order 12/18/20, ECF No. 209. Thereafter, Costello petitioned the Third Circuit for the issuance of a certificate of appealability. *See* ECF No. 212. On August 18, 2021, the Third Circuit denied Costello's request for a certificate of appealability. *See* ECF No. 224. Costello then filed a "Motion for Rehearing and/or Certificate of Appealability" pursuant to Fed. R. Civ. P. 60(b)(6). *See* Mot. 60(b), ECF No. 227. The Court dismissed Costello's motion for Rule 60(b) relief on January 11, 2022. *See* ECF Nos. 228-29. Over a year and a half later, Costello later filed a second Motion for Rule 60(b) Relief, *see* ECF No. 230, which the Court also dismissed, on November 30, 2023, *see* ECF Nos. 231-32.

On October 21, 2024, Costello filed a Motion for Compassionate Release, based on the following reasons: (1) an "unusually long sentence/change in law"; (2) "exacerbating mental illness and deteriorating mental health"; (3) the "BOP's inability to treat mental health issues specific to Kyle Costello"; (4) "long term solitary confinement"; (5) "sentencing disparities"; (6) "physical abuse"; (7) "imminent danger and long investigations" based on his physical abuse; and (8) "other reasons." *See* Mot., ECF No. 236 (capitalization omitted). On October 22, 2024, this Court dismissed the Motion for Compassionate Release without prejudice, for failure to exhaust, because Costello had not alleged that he ever made a request for compassionate release with the Bureau of Prisons (BOP) under 18 U.S.C. § 3582(c)(1)(A). *See* ECF No. 237. On February 17, 2026, Costello filed a Motion to Correct Record, in which he asked the Court to reopen the matter, requested permission to amend his Motion for Compassionate Release, and attached several revised versions of his Motion for Compassionate Release drafted by ChatGPT. *See* Mot. Correct, ECF No. 244. Also attached to the Motion to Correct Record were copies of two administrative requests for compassionate release which he submitted to the BOP: one "Informal Resolution Form" (BP-9), signed and dated by Costello on April 16, 2025, and signed by the Unit Manager on April 23, 2025; and one "Informal Resolution Form" (BP-9), signed and dated by Costello on June 2, 2025, which was not signed by a Unit Manager. *See id.* at 13-14. Costello also attached a copy of the prison's response to his June 2, 2025, BP-9 form, wherein the Warden denied his request for compassionate release that same day, finding that Costello's request did not give rise to extraordinary or compelling circumstances, as required for early release under 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g). *See id.* at 12.

This Court granted Costello's Motion to Correct Record and reopened his Motion for Compassionate Release (ECF No. 236) on February 18, 2026. *See* ECF No. 245. On March 3,

2026, the Government filed its Response in Opposition to Costello's Motion for Compassionate Release. *See* Resp., ECF No. 246. On March 23, 2026, Costello filed a Request to Amend his Motion for Compassionate Release, attached a revised draft of his Motion, and an affidavit detailing his mental health struggles and the alleged abuse he suffered in prison. *See* Mot. Amend, ECF No. 250. Separately docketed on that same day was further supplementation of Costello's Motion, to which Costello attached several affidavits from fellow inmates who attest to observing Costello's mental health struggles and alleged abuse. *See* Suppl. Mot., ECF No. 253. This Court dismissed Costello's Motion for Compassionate Release again, for failure to exhaust, on August 19, 2026, *see* ECF No. 255, but upon receipt of a clarifying letter by the Government, *see* ECF No. 256, now reopens the Motion to consider it on the merits. For the reasons discussed below, the request for compassionate release is denied.

## III. LEGAL STANDARDS

### A. Motion for Compassionate Release, 18 U.S.C. § 3582(c)(1)(A) - Review of Applicable Law

The First Step Act empowers criminal defendants to request compassionate release with the court after first complying with the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A).[2] This section dictates that the defendant must first move for compassionate release with the Bureau of Prisons ("BOP"), which then has thirty (30) days to consider the request. After exhaustion, the court "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section

[2] Section 3582(c) is part of the Sentencing Reform Act of 1984 ("SRA") but was amended by the First Step Act to provide prisoners a more direct route to court for their claims. *See United States v. Torres*, No. 18-414, 2020 WL 3498156, at *6 (E.D. Pa. June 29, 2020).

3553(a),"[3] (18 U.S.C. § 3553(a)), "to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).[4]

The "applicable policy statement[]" is USSG § 1B1.13, which defines what circumstances should be considered "extraordinary and compelling reasons" for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). "One year after Congress passed the First Step Act, however, the U.S. Sentencing Commission lost its quorum to amend the compassionate release policy statement (USSG § 1B1.13) to reflect the First Step Act's provision that a defendant was now authorized to file their own motion for compassionate release." *United States v. Castillo*, No. 12-cr-230-3, 2024 WL 453608, at *3 (E.D. Pa. Feb. 5, 2024). For this reason, the Third

---

3 The § 3553(a) sentencing factors include, but are not limited to:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> . . .
> [4] the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.
> . . .

18 U.S.C. § 3553(a).

4 *See also* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

Circuit Court of Appeals held that the Commission's policy statement in § 1B1.13 was advisory and "not binding—for courts considering prisoner-initiated motions." *See United States v. Andrews*, 12 F.4th 255, 259-60 (3d Cir. 2021) (stating that the descriptions of "extraordinary and compelling reasons" in the policy statement could nevertheless guide a court's decision). "This changed in April 2023, when the Sentencing Commission promulgated new amendments to the Sentencing Guidelines." *Castillo*, 2024 WL 453608, at *3 (explaining that the Commission regained its voting quorum in 2022).

Amendment 814 to the Sentencing Guidelines revised § 1B1.13 and makes the Commission's policy statement binding. *See id.* Amendment 814 also expanded the categories of "extraordinary and compelling reasons" that may warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *See id.* at *7. The modified categories are as follows: (1) medical conditions of the defendant; (2) health deteriorations in the defendant as a result of old age; (3) family circumstances of the defendant; (4) the defendant was the victim of abuse while incarcerated, (5) "other reasons," and (6) unusually long sentence.[5] The Commission's now-binding policy statement also requires the petitioner to show that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *See* USSG § 1B1.13(2).

---

[5] Subsection (b)(6) further provides:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

USSG § 1B1.13(b)(6).

## IV. ANALYSIS

Costello's arguments for compassionate release can be grouped into three categories: first, that he received an "unusually long sentence" that is disparate from that imposed on others; second, that his mental health has deteriorated in prison and the BOP is unable to provide him with adequate treatment; and third, that he suffered physical abuse at the hands of BOP employees. *See* ECF Nos. 236, 244, 250. The Court will address each of these arguments in turn.

### A. Length of Sentence

Under USSG § 4B1.1(a), a defendant is considered a "career offender" if (1) he was at least eighteen years old at the time he committed the offense of conviction; (2) the offense of conviction is a felony that is either a "crime of violence" or a "controlled substance offense"; and (3) he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." A "crime of violence" is defined as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--
>
> > (1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> >
> > (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

*See* USSG § 4B1.2(a).

At the time of his sentencing in this matter, Costello's criminal history included an aggravated assault conviction (where he was certified as an adult), in violation of 18 Pa. Cons. Stat. § 2702(a), and a kidnapping conviction. *See* ECF No. 124 at 3; ECF Nos. 144; 145. The sentencing court agreed with the Government and Probation Office that these offenses, considered together, rendered Costello a career offender. *See id.* Costello now argues that he should not have been labeled a career offender at the time of sentencing because one of his prior

felony offenses—aggravated assault under 18 Pa. Cons. Stat. § 2702(a) —was not a "crime of violence" (nor a controlled substance offense) under USSG 4B1.1(a). *See* Mot. Correct at 5-6. In support of this contention, Costello references Third Circuit cases like *United States v. Harris*, 68 F.4th 140 (3d Cir. 2023),[6] which held that the crime of aggravated assault under 18 Pa. Cons. Stat. § 2702(a) was not a predicate "violent felony" under the Armed Career Criminal Act (ACCA) because "the least culpable conduct hypothetically necessary to sustain a conviction under the statute" did not rely on the use of physical force; rather a conviction under 18 Pa. Cons. Stat. § 2702(a) could be sustained based on evidence of serious bodily injury, alone, and such bodily injury could result from the "omission of an act, or the failure to act." *Id.* at *145-48.

Importantly, however, the United States Supreme Court overruled this concept in *Delligatti v. United States*, 604 U.S. 423 (2025). Therein, the Court found that, "[t]he knowing or intentional causation of injury or death, whether by act or omission, *necessarily involves* the use of physical force against another person." *Id.* at 439 (emphasis added). Though the *Delligatti* Court considered predicate crimes of violence in the context of New York law, the Third Circuit has since applied its reasoning in circumstances like those currently before this Court. *See e.g.*, *United States v. Minter*, 164 F.4th 243 (3d Cir. 2026); *see also United States v. Amos*, No. 24-3367, 2026 WL 162165, at *1 n.2 (3d Cir. Jan. 21, 2026). This Court agrees with the Government that *Delligatti* abrogated the very cases on which Costello relies. His aggravated assault offense under 18 Pa. Cons. Stat. § 2702(a) qualifies as a predicate crime of violence and thus he would still be categorized as a career offender if sentenced today. Costello is not serving

---

[6] The Court notes that many of the case citations produced by ChatGPT in Costello's Motion and supplemental briefs are erroneous; the Court uses context clues such as the case name, date, and alleged holding to determine the case(s) Costello most likely attempted to reference.

an unusually long sentence, nor one disparate compared to those imposed on like offenders.[7] Thus, he is not entitled to compassionate release on this basis.

**B. Mental Health**

Extraordinary and compelling reasons justifying compassionate release may exist where the defendant is:

> (i) suffering from a serious physical or medical condition,
> (ii) suffering from a serious functional or cognitive impairment, or
> (iii) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover
> . . .
> [or where] [t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

USSG § 1B1.13(b)(1)(B)-(C).

The main thrust of Costello's Motion is based on the BOP's alleged inability to adequately treat his worsening mental health conditions, which include "major depressive disorder, chronic PTSD, [and] schizophrenia." *See* Suppl. Mot. at 1. Costello alleges that his long-term placement in solitary confinement is "uniquely damaging" to his mental illness, *see* Mot. Amend at 2, that the prison uses "restrictive housing as a default response to mental illness-mental health crises," and that such confinement is "without therapeutic support," Suppl. Mot. at 2. Costello alleges that he has spent over ten years of his seventeen-year sentence in solitary confinement, and that he has spent only eleven or so months in general population. *See* Mot.

---

[7] The sentencing court found that, once classified as a career offender, Costello's sentencing guideline range was 360 months (30 years) to life in prison, *see* Transcript part 2 at 35, ECF No. 154, but the court varied downward and imposed a sentence of 204 months (17 years), *see id.* at 43-44.

Correct at 4; Mot. Amend at 2. The Government acknowledges that Costello has "spent considerable time in solitary confinement" but attributes much of it to "disciplinary segregation" for his various infractions and "administrative detention pending the resolution of infractions." *See* Resp. at 8. The Government calculates that Costello spent roughly 27.8 months, or 2.3 years, in solitary confinement for disciplinary reasons,[8] and roughly 4.5 months "in a solitary mental health unit at Allenwood," but that Costello has resided in general population at USP Lee since November 12, 2025. *See id.* at 8-9. The Government also provided the Court with 330 pages of prison medical records, demonstrating that, for at least the last two years, Costello has met with prison psychology staff on a near-weekly basis, oftentimes denying that he is experiencing any mental health problems, objecting to visits, and refusing further mental health treatment and programs. *See* ECF No. 247 at 119-25. The Government argues that this is not an "extraordinary and compelling reason" for compassionate release. *See* Resp. at 8-14. This Court agrees.

Indeed, the medical summaries provided demonstrate that the prison psychology staff has, on various occasions, offered or placed Costello in mental health programs which Costello has either declined to participate in or withdrawn his participation from. *See, e.g.*, ECF No. 247 at 125 ("When I attempted to encourage Mr. Costello's participation in programming options and potential medication management services through Health Services, Mr. Costello once again shook his head and stated, 'I'm getting tired of saying I don't want any help from this place.'"); *id.* at 129 ("Mr. Costello reiterated his disinterest in treatment as evidenced by the below quotes: 'I ain't interested in speaking with you, your boss, or anyone else in psych.' . . . 'You keep talking about programs, but I don't want to be involved with psych.'"); *id.* at 132 ("He insisted

[8] The Court notes that the Government's estimation of Costello's time spent in solitary confinement (2.3 years) differs greatly from the estimation provided by Costello (over ten years).

that he wishes to have 'nothing to do with Psych;' however, I conveyed that we would continue to . . . meet with him every month per his MHCL, though he retained the right to refuse treatment if he so wished . . . I encouraged him to engage in treatment."); *id.* at 141 ("Notably, throughout the clinical assessment, Mr. Costello did not report, endorse, or evidence any psychiatric symptomology. As indicated, he conveyed disinterest in speaking with Psychology Services, in receiving medication management services, and in participating in a residential treatment program (i.e., Challenge Program)."); *id.* at 179 ("At the termination of the assessment, Mr. Costello stated, 'Just drop my care level, man, I don't want to talk to psych no more. Put me at a CARE1.' . . . He adamantly denied suicidal ideation. . . . He denied thoughts of violence towards others or self."). Crucially, when asked about his reported mental health struggles by psychology staff, Costello often denied having negative thoughts and hinted that his complaints about the same were merely an attempt to obtain a transfer or release from the facility:

> I then asked Mr. Costello about his report of feeling "hopeless" per his email. Mr. Costello once again denied reporting feelings of hopelessness. As such, I verbally read the email again. Mr. Costello continued shaking his head, and stated, "I was just talking about my legal case." When asked directly, Mr. Costello adamantly denied experiencing any psychological distress or psychiatric symptomology, and none was observed. . . . Notably, throughout the clinical assessment, Mr. Costello did not report, endorse, or evidence any psychiatric symptomology. As indicated, he reiterated his disinterest in speaking with Psychology Services, in receiving medication management services, and in participating in a residential treatment program (i.e., Challenge Program). He confirmed that his primary goal is to obtain an institutional transfer for unspecified reasons.

*Id.* at 125.

Overall, the factual allegations and supporting documentation make unclear the degree to which Costello is suffering from serious mental health issues. On one hand, Costello alleges that he suffers from serious and continuous mental anguish, and he attaches several signed affidavits from fellow inmates who attest that Costello's mental and emotional wellbeing is less than stellar. Yet, in contrast, the Government provides hundreds of pages of visit summaries by the

prison's psychology staff which document Costello's consistent refusal of treatment and adamant denial that he is struggling with his mental health at all. Psychology staff also reported no observable psychiatric symptomology in Costello, dropping his care level over time and decreasing medical supervision, based on Costello's improving mental condition, cognitive and social stability, and lack of self-harm. There is nothing to indicate that Costello's ability to provide self-care in the prison has diminished, nor is there anything to show that he requires specialized medical care that is not already being provided.

In all, it appears that the BOP has provided Costello with considerable mental health treatment. To the extent Costello argues that such treatment is not enough, the record makes clear that Costello has deliberately chosen not to avail himself of the many treatment plans, medications, and mental health programs made available to him. Thus, it appears he would not know if all of the prison's options for mental health treatment are truly insufficient; he has opted not to participate in them. There is no indication that the BOP has ceased its treatment efforts nor that Costello's condition has worsened as a result of their efforts. The Court finds that Costello has not presented extraordinary and compelling reasons justifying early release, and so it need not address additional sentencing considerations related to his mental health conditions. Costello is not entitled to compassionate release on this basis.

**C. Physical Abuse**

Extraordinary and compelling reasons justifying compassionate release may also exist where the defendant is a victim of "physical abuse resulting in 'serious bodily injury,'" which "was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant." USSG § 1B1.13(b)(4)(B). "Serious bodily injury" is defined as "injury involving extreme

physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation," or resulting from "criminal sexual abuse under 18 U.S.C. § 2241 or § 2242 or any similar offense under state law." USSG, § 1B1.1 cmt. 1(L).

The last argument for compassionate release in Costello's Motion is based on allegations of physical abuse by BOP employees. Costello claims that he has been physically abused by BOP staff at several prisons, including "upon arrival at U.S.P. Coleman," *see* Mot. Correct at 2, and "[a]t USP Canaan," *see id.* at 4, but that "due to Agency Rules [he] will not be able to [receive] any records concerning investigations," *see* Mot. at 4. Costello recounts that, while at USP Canaan, "he was subjected to repeated physical abuse and torture by staff," *see* Mot. Correct at 4, and that at some point, "[a]ccording to some available records Mr. Costello was sent to the emergency room for approximately ten days for a suicide/self harm intent," which was "a direct result of the abuse" he suffered, generally, *see id.* at 3. Costello's two Informal Resolution Forms (BP-9s) filed with the BOP in 2025 state that he is in "imminent danger of staff assault," *see id.* at 13-14, but do not describe any specific occurrences in which he was physically harmed or threatened, or by whom, *see id.* By way of further support, Costello provides a signed affidavit, wherein he alleges that "on the date [he] arrived at USP Lee (Nov 12-16) [he] was threatened by Dr. West that if [he] report[ed] self-harm or suicidal ideation that [he] would be f[----]d up and put in four point restraints. . . ." and was told that Dr. West would "give [Costello] hell" if he had any problems. *See* Mot. Amend at 4. Costello further alleges that on that same date (in mid-November 2025), he "was thrown against a wall and [his] face mashed into the wall by a C.O." *See id.* Later that month, he was allegedly "threatened by Dr. Wasim that he was going to knock [Costello's] head off if [he] made any more reports," and was

"groped aggressively by Dr. Wasim in the hallway and told that he breaks prisoners and he is here to handle problem prisoners." *See id.* Costello claims to have "been issued six (6) incident reports by Dr. Wasim and Dr. West" for insolence, phone abuse, and refusing to speak to Dr. West; Costello claims that he has "been assaulted and attacked because of these incident reports," *id.* at 5, and that from December of 2025 to January 2026 he "was threatened wi[th] harm and intimidated by C.O.s," *id.* at 4. Costello also submitted several affidavits by fellow inmates, one of whom recalls a corrections officer responding to a distress call for Costello and saying "Dr. Wassim told me about you Costello and I don't care," *see* Suppl. Mot. at 12, another of whom states "[t]he psychologist[s] here at USP Lee have threatened [Costello] to get him assaulted by correctional staff if he asks for help," *id.* at 10, another of whom says he witnessed Costello be "physically threatened on more than one occasion," *id.* at 9, and another of whom says he "witnessed [Costello] being threatened & belittled by the C.O.'s and psychologists," *id.* at 8.

By contrast, the Government recalls only one complaint of physical abuse that was made by Costello while housed at USP Coleman. *See* Resp. at 15. The Government indicates that this allegation "was investigated, and it is anticipated that the matter will be closed shortly as unfounded." *See id.* To wit, the Government's 330-page long compilation of medical visit summaries shows that Costello denied being a victim of any physical, emotional, or sexual abuse in his health screenings on April 8, 2025, May 6, 2025, October 31, 2025, and November 12, 2025, *see* ECF No. 247 at 54, 60, 66, 72. These records also show that on January 16, 2026, Costello sent an external email which said that he had recently been "pat searched" by BOP staff in the hallway (seemingly without reason) and that since that incident, he has avoided going to the chow hall, because he feels "hopeless." *See id.* at 122. Psychology staff promptly met with

Costello the very same day to discuss the alleged physical abuse and his feelings of hopelessness described in his email, but Costello replied, "I don't want anyone looking at my emails. I'm trying to get my lawyer to get me out of here. I don't need any help from psych." *See id.* at 125. When psychology staff redirected Costello back to the content of his email "to ensure that [they] gathered sufficient information regarding his report of abuse by staff, he stated, 'I ain't accusing anyone of anything like that here. No one did anything. I'm just trying to tell my lawyers stuff so they can help me out!'" *Id.* Costello "once again denied reporting feelings of hopelessness," and when asked about his reports of verbal and physical abuse, he "adamantly denied experiencing any abuse . . . confirmed that his primary goal is to obtain an institutional transfer for unspecified reasons . . . [and] adamantly denied interest in speaking with SIS regarding any concerns of abuse, mistreatment, or neglect at the current institution." *Id.*

The warden's denial letter written in response to Costello's administrative complaints explained that, among Costello's other stated reasons for compassionate release, his "statement that [he is] in imminent danger resulting from a staff assault" did not meet the criteria for a reduction in sentence, and as such, Costello is "not eligible to be considered for a reduction in sentence." *See id.* at 12. This Court agrees. Overall, Costello's alleged experiences describe a pattern of perceived threats and "bullying" by BOP staff, but his only allegations of physical contact are that he was "thrown against a wall and [his] face mashed" by a corrections officer and either patted down or "groped aggressively by Dr. Wasim in the hallway" in November 2025. *See* Mot. Amend at 4. Importantly, Costello does not allege that he suffered physical injuries as a result of these encounters, let alone a "serious bodily injury" involving "extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical

rehabilitation," as required to state extraordinary and compelling reasons justifying compassionate release. USSG, § 1B1.1 cmt. 1(L). Costello alleges that he was "sent to the emergency room for approximately ten days for a suicide/self harm intent," but does not say *when*, and does not draw a connection between this hospitalization and the two incidents with BOP staff in November 2025—only that such hospitalization was "a direct result of [his] abuse and deteriorating mental health" at large. *See* ECF No. 244 at 3. Even if the Court were to find this sufficient to show that Costello suffered a "serious bodily injury" as a result of physical abuse, two months after these alleged encounters, Costello retracted these allegations when he *denied experiencing* any physical abuse by BOP staff and denied feeling hopeless as a result of any alleged mistreatment. Accordingly, Costello has failed to allege any extraordinary and compelling reasons warranting compassionate release, and such relief will not be granted on the basis of alleged physical abuse by prison employees.

## V. CONCLUSION

Costello's stated reasons seeking compassionate release do not rise to the level of extraordinary and compelling necessary to warrant such relief. Accordingly, there is no basis for consideration, and the Court need not address the 18 U.S.C. § 3553(a) sentencing factors. Costello's motion for Compassionate Release is denied.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge